Next case is Airbus S.A.S. v. Firepass Corporation, 2014-18-08. May it please the Court, the Board's dismissal of Airbus' cross-appeal was error because it was in clear conflict with 35 U.S.C. section 315. That statute gives Airbus the right to re-examination had been ordered. The examiner had issued an office action rejecting all the original claims. Firepass came back after the office action proposing dozens of new claims. I just want to make sure I understand your argument. Your argument isn't, I don't think, tell me if I'm wrong, that any time re-exam is instituted, it's then a free-for-all. Right? That's not your argument. Your argument isn't just because re-exam, just because the examiner finds one substantial new question of patentability, now he or she is forced to adjudicate every proposed rejection that you think he should. Your Honor, I think Belkin decided that issue that the mere institution of a re-examination does not open the floodgate to any and all prior art. Our position is that that is limited by the regulation, 37 CFR 1.948. Inter-party re-examination is an adversarial process. Congress didn't speak to the particular issue of what happens when the scope of a re-examination is expanded in some way, whether it's because of a patent owner argument or an amended claim or a new claim. Is the contention that with respect to the new claim limitations that additional art can be brought in and that you have to find a substantial new question of patentability? I don't think the substantial new question of patentability test applies post re-examination. Right, but what you're contending is that where somebody brings in an amendment with a new claim limitation, that additional art can be brought in to show that that is obvious, right? Subject to the limitations of 1.948. It's a responsive provision. So we are at Airbus as a third-party requester, brought in new prior art, I should say additional prior art that was not subject of the original re-examination order, specifically to address the new limitations of claim 91 through 94. Here's the only thing I don't understand. In a re-exam, you can only narrow claims. You can't broaden them, right? That's true. So if the examiner said your two pieces of new prior art didn't raise a substantially new question of patentability to the original claim, and if the new claims are only narrower, how do you get to a substantial new question of patentability just because your prior art, which didn't raise a substantial question of patentability on the broader claim, now goes to some of the narrower limitations? It's an obviousness rejection. So if you compare, for example... Yes, but if the broad claim isn't rendered obvious by your two references, a narrower claim can't possibly be rendered obvious by your two references. Maybe I can explain using the example actually that happened in this case, which is claim one is anticipated by the 652 patent, prior reference. It's been held that way by the board. It's not been appealed. Claim 91, which is the independent claim that's at issue here on this cross-appeal, is effectively the same as claim one with some additional, I'll say trivial hardware limitations that have been added, things such as a filter. No, but also added a computer, a control means or something, right? A routine general computer means. So, trivial or not, the point being that Airbus for claim 91 relied on the 652 patent, which means for all the limitations of claim 91, that are the same as original claim one, and then brought in additional prior art to address the new limitations, most of which were not the subject of any... That's prior art, isn't it? AFWAL and Knight? That prior art was cited in the original re-examination request for an entirely different purpose. Well, it was cited against a broader claim, right? It didn't raise an SNQ? That was true. It was cited against claim one with respect to... Well, why isn't Judge Mall correct that claims 91 to 94 are narrower, and so how could it raise an SNQ with respect to a narrower claim if it didn't with respect to a broader claim? Because we're only relying on that for particular limitations. Well, it's a new claim, which is they're narrowing it and saying we're avoiding the anticipation by narrowing it, and now all of a sudden the question of whether the narrower claim is raised for the first time, and you're trying to bring in the art to show that. These are limitations that were not, most of which were not in any original claim. They were never subject to an original examination. So, yes, you have a narrower claim, but for showing that those additional limitations, the narrower scope... They're saying it's narrower, so we're avoiding the original patentability problem that we had, right? I don't... I mean, they're saying that by narrowing the claim, we've avoided invalidity. That is certainly what the patent owner has said, but all of the limitations that are duplicative of claim one are met. They're met by the six... But we're talking about the new limitations. You're bringing in new art to address only the new limitations, which they say have solved the invalidity problem. That is certainly what they say. Well, that's what you say, too. You say they've narrowed the claim to avoid invalidity. They've raised a new question by doing that, and we're trying to bring in this art to show that that doesn't solve their obviousness problem. We certainly think that... We say that doesn't solve their obviousness problem, not because of the substantial new question of patentability analysis. It's because it's necessary to rebut that amendment. It's not because that necessarily raises a substantial new question of patentability, which of course it does. Of course it does. These are limitations that were never subject to any original examination. We don't think that that test survives the reexamination order. That's not how the statutory scheme is set up. So if we were to agree with you and say that the examiner and the board applied the wrong test, that there isn't... It isn't a substantial new question of patentability, what should we do? Should we send it back to them to redo it? I think that it should be sent back to the board for consideration on the merits. If the board doesn't think that that was sufficiently considered on the merits because the examiner referenced this SNQ test, then it can deal with it as it sees fit. I guess one of the questions... How many cases is this going to affect? I mean, reexam is dead now, so this is only going to be something that's going to affect older cases still in that inter-party reexam pipeline. And are you aware of any other, or do you have any personal knowledge of how often... I mean, you know, to me, I looked at this whole prosecution history and I'm like, why didn't the stupid examiner just address the rejection? I mean, you know, it would have made everybody's life a lot easier. It wouldn't have taken them long. I don't get it. I mean, granted, one of your documents is like 1,300 pages, and I get it, but you point it to specific... Anyway, the whole point of it is how many more of these cases is something like this going to ever be an issue in, given the changes in the law? I can't tell you how many total, Your Honor, but I can tell you... I'm not saying it doesn't matter for you. We have another... You have another one? We have another reexamination between the same parties that involves, I'll say, a similar issue. Where the examiner also, after amended claims were introduced, refused to address the rejection. That's correct. Now, that is still pending on appeal before the board. I guess I'm just wondering, but apart from the two cases that you have, and I bet it's the same examiner on both of them, isn't it? Yes, it is. Yeah, yeah, yeah. So apart from that one examiner in the two cases you have, I just want to know, is there reason for me to be worried that this is a big deal, that there are a lot of cases in the pipeline that you're aware of that are going to be impacted? I'm not aware. It's a big deal to us, Your Honor. No, I get that, and I'm not disputing it. So now let me, though, push on... Because there's a difference between whether you deserve to win, to be clear. So I don't want you to think all these questions are hostile questions I'm about to ask you, because they're not. So make sure you listen carefully. There is a difference between whether you deserve to win on this fact pattern and the rule that you seem to be pressing for. I don't think you need to press for as broad a rule as you're asking for in order for you to prevail. So let me just throw out an alternative idea to you and see if you're like, yeah, that's something we could probably buy into, that it isn't the fact that an amendment is made that automatically opens the door to all new prior art and every rejection that you make, right? Because, wait, listen, hear me out. I'm going to give you an example. For example, suppose your initial S&Q question to the examiner was, this claim, these two references, and he says no S&Q. Suppose all they did was add another new limitation to the claim, and you now want the examiner to consider those same two references, so all you have is a slightly narrower claim, no additional references. That is not your fact pattern. I know that. That's why I said keep in mind it's not a hostile question to you winning or losing. It's more trying to go to the heart of, when does the examiner have a right to refuse to consider a rejection? You seem to have proposed a rule that I wasn't sure if it was any time reexam is initiated or any time there's any amendment. Neither of them are really palatable for me because I can envision circumstances that aren't your case where I feel like the examiner ought to have a right to still say no S&Q here. I said no S&Q the first time, the fact that they added a limitation, and you're raising only the same two references, still no S&Q. I know that's not your fact pattern. What do you think about that rule? So understand the instinct that there is some unfairness to that, the idea that a requester could bring back in the same exact references for a narrower claim. It doesn't make sense in that sense. But the test is 1.948, and under the scenario that you gave, Your Honor, the examiner could say no, you didn't meet the standards of 1.948. I'm sorry, 1.948? You're only using the new art, right, to address the new claim limitations. You're not contending that you could use new art to show obviousness with respect to the claim limitations that were in the original claims, correct? That is correct, Your Honor. I will give one, there is, maybe I don't want to call it an exception, but there are times when a patent owner could open the door to that through an argument. It happened, actually, in our case, it's not on appeal, but where the patent owner came back subsequent to the re-examination order in response to the first office action and gratuitously said, by the way, all the reasons for denying the SNQ with respect to these APOL 26, the aircraft prior art, they were all wrong. That's what happened in our case. And so there might be a situation like that that could arise where there might be a reason to bring back in the prior art. And that's why in an adversarial system, 1.948 makes perfect sense, where it has to be responsive in order to bring back that prior art. It has to be responsive, but it kind of goes back, and maybe your view is the examiner has to, he can reject the rejection. You know, he can refuse to institute the rejection. Maybe that is your view, but I guess what I was thinking was, it kind of goes back to that very first question I asked. Again, I know, not your fact pattern, but if you have a broader claim and you've argued two new references, an examiner says no SNQ, and then the patentee adds a limitation for whatever reason to that claim, and you only argue those same two references, I mean, it feels like he should be able to, the examiner should be able to say, look, no SNQ. You can't force me into considering all of the ones I said there's no SNQ for simply by virtue of the patentee introducing. Because even though they added a limitation, it wouldn't necessarily, those same two references, if they didn't help you with the whole thing, wouldn't necessarily help you with the whole thing plus a new limitation. I agree, Your Honor, I agree with the outcome of what you're saying, just for a different reason, that's all. Just that the SNQ test is entirely a bar to unjustified challenges to issue patents. That's how the statute is set up. That's what the legislative history says. So the office has created a regulation to deal exactly with the problem that Your Honor stated, and in this case, they didn't follow it. But the examiner could have said, I don't think these new references that you're introducing are really relevant to the amendment or argument. I mean, I don't see how he could in this case, given that you are citing the filter and the computer or whatever in the references. But you're saying there would, in a different case, where it really seems like a frivolous attempt to just redo what you lost on already, he could use that mechanism to avoid doing it. But it wouldn't be, he wouldn't be able to say, no SNQ, go away. He'd have to say, your art is not responsive to. That's exactly right, Your Honor. And in our case, there was no objection under 1.948 that it was responsive. But this is a question of appealability, right? Whether the decision below was one favorable to patentability. So this is an issue of appealability. I agree, Your Honor. So, you know, there are kind of two ways to look at this. I mean, the error of the board stems from what we believe is a misreading of the Belkin decision. I know, Your Honor. Using the wrong test. Using the wrong test. The Belkin decision talks about. They shouldn't be using the SNQ test with respect to the amendments. That's correct. That's correct, Your Honor. But what happens, I mean, in our case with respect to appealability, when a requester legitimately proposes a rejection, meets all the requirements of 1.948, and it's during the course of a reexamination, and the examiner doesn't accept it, that's a decision favorable to patentability under any interpretation of that phrase. See, that doesn't make sense because then it would morph every determination by the examiner that there is no SNQ for a given rejection into a question of patentability. Well, Your Honor, I mean, under our view of it, it would be an examiner's determination that that proposed rejection was not responsive under 1.948. But that's not the determination he made here, right? The determination he made was no SNQ. So we think that was an improper test. Well, isn't that the simpler way of doing it rather than to say we should treat the SNQ determination as a determination as to patentability? That allows the examiner, it gives the examiner the statutory authority to take our appeal right away, which he doesn't have. I don't understand what you're saying. I don't think you're listening to my question. Isn't the simplest thing to say here that he applied the wrong standard, that SNQ isn't the test with respect to the amendment? Whatever limitations there are on his considering prior art, we could just send it back and say he applied the wrong test, apply the correct test. Yes, that is correct, Your Honor. We've consumed your rebuttal time, but we'll give it back to you. Thank you. Three minutes. Mr. Chomsky. Thank you, Your Honor. Good morning. May it please the Court, Eric Chomsky. Excuse me, with a frog in my throat representing Firepass. Judge Moore, I'd like to begin with the very first question that you asked because I think it really goes to the heart of the question and in particular my friend on the other side's answer, which I actually think makes the resolution of the core legal question here easier. You asked whether reexamination, whether it's a free-for-all once you get into reexamination. And the answer is absolutely not, and not just because of Belkin. It's that every single bit of authority out there tells us that the FNQ standard, the first step of the two-step process, applies even after reexamination has been started. So Belkin tells us that. Portola also tells us that. And this is where I want to get to the answer that- Well, Portola's dealing with an entirely different question, right? I'm not sure it is in the following sense. Portola was dealing with amended claims in a reexamination and it applied the FNQ standard and considered whether there was in fact an FNQ there. No, I don't think it applied the FNQ standard. I think that the PTO's argument was that the amendments solved the problem of jurisdiction because the amendments raised a substantial new question. I don't want to fight too hard on this point because we don't rely that heavily on Portola, but I'm not sure that's quite right. Wasn't Portola overruled by Congress? Not this aspect of it. One very limited aspect of Portola was overruled by Congress. But all I mean to say, Judge Dyke, is that Portola was applying the FNQ standard, and even if that was merely just the common understanding of both parties, including the PTO and this Court, if FNQ were not the appropriate standard for those claims in reexamination, the entire body of the opinion would have been unnecessary. The whole fight there was whether there was a new question. If FNQ isn't the standard, you don't even have to talk about it. The opinion was directed to the FNQ standard in terms of whether you could were limited to relying on new art or whether you could also say that old art raised a substantial new question, and that aspect of the case, as Judge LaGuardia pointed out, was overruled by Congress. But in terms of the amendment language, which you're relying on, the Court said we reject the Commissioner's argument, the amendments create a substantial new question. That's a different question here. There the PTO was arguing that somehow the jurisdiction over the reexam could be saved by looking at the amendments and said that they raised a substantial new question. That's not what's involved here. I do not disagree with you, Your Honor. We're on the same page. My point is only that it's at least indicative of and supportive of the broader proposition we're making. And I do want to finish going back to the question that you asked, Judge Moore. The answer that Airbus gave is that Congress didn't speak to the particular issue and that what we are talking about here is what you do with 37 CFR section 1.948. We are in agreement that 1.948 is the provision that tells you what the requester is allowed to do and say once you're in the world of amended claims. But the critical fact here, and this is where I think that this case starts to look pretty easy, is that the MPEP, section 2666.05 in particular, interprets 37 CFR 1.948. And so this is a classic case for a minimum hour deference where we're talking about an agency's interpretation of its own regulation and what 2666.05 says is... I didn't see the MPEP being that clear. So you tell me precisely what it says that makes it clear. So section 2666.05 deals with amended claims and it interprets section 1.948 and it says, any such new proposed rejection stands on the same footing as a proposed rejection presented with the request for reexamination and it applies the underlying reexamination standard 2617. Where is this? Where are you reading from? Is this in the brief? I don't know if this precise quotation is in the brief. I know that we cite and rely on 2666.05. So what I'm looking at is the 2008 revision to the MPEP, which is the one that would have been in place at the time, and the page number I have here is 2600-93. And the substance of it is that this provision of the MPEP applies the same MPEP provision, 2617, that requires the showing of a substantial new question of patentability. Even if you were correct, and I don't know whether you are, what are you saying, that there's Chevron deference applicable to this provision or just our deference? I think it would be our deference technically because it's the agency interpreting its own regulation. But again, this is just to take the other side's argument. But the question is, does the statute allow the PTO to use substantial new question of patentability with respect to new claim limitations added by amendments? Or whether that's just the wrong standard under the statute. Could you address that question? Sure, Your Honor. Just to be clear, I was addressing the argument as it was made, which is that the statute doesn't say one way or another. And if that is true, if there is a gap in the statute that merely needs to be filled, some interpretation that needs to be added, then we really are in the world of our deference, and it's a pretty easy case. But to answer your question... I'm not sure that they're saying the statute is ambiguous, but go ahead. I think what he said was Congress didn't speak to the particular issue. I mean, I'll let him speak for himself. I do think that this remains a powerful argument, whatever the other side says on that question. But the bottom line is we think that the statute itself, at a minimum, authorizes, if not says that the better answer is, that you apply the SNQ standard. We know that SNQ is the standard that applies... But the statute tells you when to use SNQ, and it doesn't say anything about using SNQ to amendments, right? Well, it also doesn't say... It doesn't say that as to amendments, they're to be considered under the initial examination standards? Right, and if that were all, then that leaves the gap in the statute, and the question is just which is the best... Or where's the gap? I mean, it sounds as though they said use SNQ with respect to the initial commencement of the re-exam, and if somebody makes an amendment, you treat it like an initial examination. What's not clear about that? If that were right, if that were the rule, it would prove way too much because it would make Belkin wrong. Belkin has already told us you don't draw a line between everything up to the moment of re-examination and everything that comes after. What we know from not just Belkin, but Section 2658 of the MPEP, and to the extent you think it at least indicative, Portola, and also 2666.05, and every other authority and every other circumstance we've been able to identify, is that even after re-examination has started, you still use SNQ. You still use the same two-step process. We're talking about applying SNQ to limitations added by amendments. Belkin doesn't have anything to do with that, right? Well, it doesn't squarely address the question of amendments, to be sure, but Belkin does... It says do the amendments under the initial examination standards, right? Correct. So, that sounds as though that's what you're supposed to do, to apply the initial examination standards to the amendments. I apologize, Your Honor. I think I understand the question now, and perhaps I didn't before. I don't know that applying the initial examination standards means that SNQ is off the table. If that were true, then when an examiner sua sponte identifies a potential new basis for rejection, you also wouldn't apply SNQ. And we know that you do. We know it from the MPEP and from Belkin and from various other sources. So, again, we're in this situation where you would have to conclude that in just this one situation, proposed amended claims, you don't apply SNQ, you don't apply the so-called two-step process that we know applies in every single other circumstance. And it seems to me that... But the amendments are different because you're adding claim limitations that weren't part of the original proceeding. You're trying to avoid an invalidity determination. And why isn't that a rather different situation than the initial institution and the treatment of prior art with respect to the original claims? So, let me try answering it this way. So, imagine that the claims here issued. So, they issue as part of a new patent. And at that point, Airbus seeks to have the claims reexamined. At that point, it seems absolutely incontestable that you would apply the SNQ standard, right? You would have issued claims, you would be seeking reexamination, and you would apply the two-step process. So, again, the baseline is that you always apply SNQ. You would have to think there would... It's not what the statute says, right? Well, it is when you put them together, it's what Belkin says, it's what 2666.05 says, it's what 2658 says. Again, one can discuss how much weight it's worth, but it's what Portola says. We know that you apply the SNQ standard for ex parte reexamination, for claims or rejections identified sua sponte by the examiner even after ex parte reexamination has begun. We know you apply it for inter partes reexamination. We know you apply it for rejections identified sua sponte by the examiner even after inter partes reexamination has begun. This truly would be the only situation in which you don't apply the two-step process. And there is nothing about the statutory structure, leave aside this court's precedent in Belkin, and each of these other scenarios to suggest that this situation merits different treatment. Perhaps another way of getting at this question is to go to a later question that you also asked, Judge Moore, and that was, what do you do when you are getting these claims amended? What happens when you have potentially new claims? And that is to say new elements on the claims. And the answer is exactly the same here, at least with regard to the reasons for applying SNQ, as it is in every single other one of these scenarios. This is a process by which, as the court recognized in Belkin and has in subsequent authorities reaffirmed, you have the two-step process for a reason. You have it because this was meant to be. I must say, I find this very confusing. The whole concept of SNQ is directed to a substantial new question of passability with respect to claims that have already been examined in the initial examination and whether that should be revisited in the reexam. When you have new claims with new limitations that haven't been examined, why does it make any sense to apply the substantial new question to new limitations, new claims that have never previously been examined? Judge Dyke, I think the answer to that, and just to situate this in the discussion, the question here is whether the standard makes sense. And the argument the other side would need to be making is that it doesn't make sense, and indeed the argument they've made in their papers is it could never make sense. And that's not right for the following reason, and it's the reason that Judge Moore suggested that with one of her earlier questions. It is entirely possible that you would have no substantial new question, and again, a case like this illustrates why. To the extent the elements are elements that have previously been examined, and to the extent those elements have been examined in the course of the proceedings or the antecedent proceedings, in light of the same art, there's nothing new. And so while it is true... I'm not arguing that you can bring up new art with respect to the old claim limitations. It's only the new claim limitations that were never part of the initial examination. But again, all I'm trying to show is that SNQ can make sense here. And the reason it can... is this fact pattern. And here is your problem. Correct me if I have any of these facts wrong. Original independent claim one, the examiner decided there was an SNQ based on the 652 prior art, but there wasn't based on those other two. Correct. Okay. So then, so we're in re-exam because there is a substantially new question based on a new piece of prior art, the 652 patent, that wasn't previously before the office. In response to the 652 patent, the applicant then amends the claims to add new structural limitations. A filter, reduced humidity, a computer control. So we have the 652 patent. New patent has rendered a substantial new question on independent claim one. Now, we're looking at an amended version of claim one. And the question is, does the requester have a right to say, these amendments don't get you out of the problem that we proved existed with the old claim because these new amendments are present in this additional prior art. Now, this case ain't a do-over of the SQN that the examiner rejected. This case is a true example of them presenting art that goes directly to the heart of amendments after they've already established that the original claim is not entitled to patentability. So, not surprisingly, I disagree. But let me resist the premise of the question before. On what fact do you disagree? So, I disagree in the following sense. No, did I misstate any fact? Did you misstate any fact? I don't think I did. So, I want to make sure that I'm not misunderstanding which art was applied to which claim, for example, or something like that. You did not misstate any fact, but it is legally irrelevant for the following reasons. First of all, of course, just as a threshold matter, if we are right that the SNQ standard applies, that would only be a question about the merits, and that then would be... I know, we don't have appeal rights. Understood. So, that's as a threshold matter. This goes to the question I was inartfully, the answer I was inartfully giving Judge Dyke about why the SNQ standard can make sense, why 2666.05 of the MPEP does make sense in applying the SNQ standard here. If the elements that are added are new to Claim 91 here, but they are claim elements that were previously examined, then they are old in the sense of the SNQ standard. So, while you are correct in stating those facts and stating that Claim 91... Are you saying this new art is not allowed to be argued by them pursuant to 1948, CFR 1.948? Yes, precisely because our view on the underlying merits is that these are arguments that have been made in the course of the prosecution and the prior examinations, but more to the point. So long as that is a possibility, so long as it makes sense to continue having the filter of the SNQ standard, to weed out that possibility and to ensure that there are not duplicative proceedings, and I think one would have to concede that it is at least a possibility. Are you suggesting that in the initial examination here that this art was considered in relation to filter and computer limitations? There are a number of different limitations here in Claims 91 through 94. I'm asking you, in the initial examination here, are you suggesting that this prior art was used to address filter and computer limitations similar to those that have been added now? My understanding, Your Honor, is that these elements are all over the prior examination... I don't think you're answering my question. Are you suggesting that this art, this new art, was considered during the initial examination with respect to these claim limitations, which now appear for the first time in the amended claims? Yes, Your Honor. That much of this... And to be clear, though, this is an argument that is for the examiner and then ultimately... No, but where in this record does this show that the initial examination considered this art with respect to these new claim limitations? Well, that's the simplest answer, Your Honor, is that it's not on this record because it's not before this court because it wasn't argued to this court. My own... But the only thing I am... But you're making representations about what happened in the initial examination that you can't support. So let me take a step back from the record and answer the question in the following way. The question was posed in terms of the record of this case. Isn't this a case in which you have exactly the problem we should be worried about? And my answer to that question is no. You are absolutely right, Judge Dike, that I say that as a representation and it's not on the face of this record. But my only point and the only thing that I think has been argued and that we need to establish is does the SNQ standard apply? And my point is it makes perfect sense for the SNQ standard to apply. I would prefer, frankly, to abstract it from the facts of this case because I think it's simpler and more straightforward for the reason I was suggesting to Judge Moore. You can have a situation in which you are talking about old elements and old art. And if that is so, if that is a possibility, then it makes sense to use the SNQ filter for the same reason that Belkin and the board itself and Avery Dennison and every other bit of relevant authority we've been able to identify suggest that it makes sense to apply that same filter. Can I just ask you a final question here, which is are you aware of any number of other cases in which this matters? I mean, this seems to be a backward-looking-only scenario given that these statutes don't exist in this form. My understanding is the same as yours, Your Honor. Frankly, in all candor, one of my first questions in looking at this case is why doesn't this come up more? And we just haven't been able to find many examples. The ones that I'm aware of are Avery Dennison, where, of course, the board addressed exactly the question presented here and decided it in our favor. And as my friend on the other side says, there are a couple of other pending matters involving the same parties and where there was a similar threshold determination of no SNQ. So under the AIA, reexaminations continue that were instituted before the effective date of the Act, but that no new ones can be initiated. Is that the cutoff date? That's my understanding, Your Honor. Right, so this is truly backward-looking in that regard. Thank you, Mr. Chomsky. Thank you very much. Mr. Berkowitz, we'll give you five minutes to rebuttal if you need it. Thank you. Let me first address your question, Judge Dyke, about whether any of these claims, claim limitations were previously examined. The answer is no, and we did point that out in our brief that these limitations were not the subject of any originally challenged claim, and most of them were not the subject of any original claim. Things like a filter were never the subject of any prior examination. And I think for that reason, it actually is a perfect example of why it doesn't make sense to apply the SNQ test in these circumstances and certainly not to cut off a requester's appeal right whenever an examiner mentions the word SNQ. To counsel's point, as far as we know, there is no authority talking about the SNQ test post-reexamination order. We disagree that the MPEP 2666.05 talks about that. That section talks about 37 CFR 1.948, which is the regulation allowing responsive arguments. The Belkin case, we don't... But then tell me how, because the opposing counsel points out that that MPEP section is talking expressly about 1.948, and it says that any newly proposed rejection has to comply with the guidelines of 2617, which are about SNQ. 2616, which is... 2617, I think it is. So, Your Honor, it's a passing reference to 2617 or 16, which also talks about particularly pointing out the way in which the prior art renders the claims unpatentable. So I think it's a big leap to, one, say that this is something that the agency has done through the MPEP when it's otherwise clear in the regulation that the SNQ test isn't there. It's just not mentioned. So there really... We don't think there is any authority that talks about... And I guess one other point I should make is that that's not really what's at issue here because this was not a matter of interpreting 1.948. There was no reference by the examiner to, you know, you failed to meet the standards of 1.948 because of this, you know, implicit SNQ test. The examiner just never talked about 1.948. He applied the wrong standard. And, Your Honor, I guess what I want to say at the end is to your question from earlier, Judge Lurie, about appealability. And this is an issue of appealability. And the facts of this case demonstrate exactly why a third-party requester has to have the right to appeal. You have a fact pattern here where these were entirely new limitations and we put in prior art to address these limitations never before examined. And the examiner, for whatever reason, presumably because we had cited this art in the original request, just reflexively said no SNQ. And under the board's reasoning, that could cut off our right to appeal. And that's not what Section 315 is about. In fact, Section 315 was amended by Congress to create symmetry between the right to appeal of a requester and a patent owner. What the board's rule does is effectively create a situation where there isn't symmetry anymore. If our proposed rejection had been adopted, of course the firepass, the patent owner, could have appealed. But under the board's reasoning, if it's not adopted for this particular reason, we can't appeal. So the board's rule effectively takes the statute back to its pre-amendment days where there's an asymmetry between what the requester can appeal and what the patent owner can appeal. Thank you. Mr. Berkowitz will take the case on review. All rise. The Honorable Court is adjourned from day to day.